TURNER *v.* BANK OF AVERA *et al.**

(Division A. June 8, 1925.)

[104 So. 455. No. 24342.]

1. EQUITY. *Notice ordered by court held to give no right of intervention.*

If otherwise creditors of defendants had no right to intervene and contest the validity of complainant's asserted security, in suit in which receiver was appointed, notice inviting them to do so, given pursuant to order of court, gave them no such right, against objection of complainant.

---

*Headnotes 1. Equity, 21 C. J., section 342; 2. Equity, 21 C. J., section 343.

APPEAL from chancery court of Greene county.

HON. V. A. GRIFFITH, Chancellor.

Suit by J. Tyler against C. C. Harvey, in which the Bank of Avera and other creditors of defendant were allowed to intervene and contest the validity of complainant's asserted security. From adverse decree, complainant appeals. Reversed and remanded.

*Tally & Mayson,* for appellant.

The Chancellor held that the receivership was a general one, that any creditor could probate his claim and

(1)

participate in the assets of the estate. The decree provided that Turner could participate in the assets in the proportion that his debt remaining unpaid bore, to the whole amount of debts, and that the assets should be distributed ratably between complainant and the intervenors. Appellant feeling aggrieved at the court's decree has applied for and obtained an appeal to this court.

INTERVENTION. The appellant respectfully insists that since the court decreed that he is entitled to the relief prayed for against the appellee, Harvey, and in view of the fact that the entire assets of the appellee, Harvey, will fall short of paying complainant's debt, and by virtue of the facts that he was a lien creditor, he was entitled to all the assets of the estate to be applied to his debt. None of the others were lien creditors; in fact they were not creditors of the Harvey Lumber Company as operated by Harvey, but personal creditors of his before he began the operation. We especially insist that the appellees, Bank of Avera, Bank of Richton, and G. T. Dunham could not intervene in a proceeding like this.

It was urged before the Chancellor that the doctrine in *Crystal Springs Bank* v. *New Orleans Cattle Company,* 132 Miss. 52, 95 So. 520, and the well-recognized authorities referred to in that well-considered opinion were controlling. The learned Chancellor though undertakes to write around that decision. He undertakes to differentiate between the case at bar and the case last cited.

Appellant did not exhibit a creditor's bill against the defendant under section 553, Code 1906, section 313, Hemingway's Code, and invite all others similarly situated to join with him as a party complainant. The complainant was not undertaking to vacate a fraudulent conveyance, but he was undertaking to foreclose one which he at least conceived to be practically free from fraud. In *Crystal Springs Bank* v. *Cattle Company,* the court evidently intended to hold that one could not intervene on timely application for the purpose of asserting a claim to the subject-matter, but intended to hold that he could not be made a party to the litigation at any time, either

before or after the case was set for final hearing.  It would make no difference if he was entitled to intervene, whether the intervention was filed early in the stage of the proceedings or just before it was wound up, unless time, of course, was the essence of his right, but that does not appear to be the case.

The principle is elementary that a complainant has the right to say who shall be parties defendant in litigation, and no person has a right to invite himself into the litigation until the complainant or plaintiff, has made him a party defendant and he is brought in by the orderly process of the court.  It is the business of the court to pass upon the cases as presented, and not to say to the parties litigant whom they shall or shall not invite into the litigation.  No one in any litigation is permitted to intervene unless specifically authorized by statute.  Intervention was borrowed from the civil law, and while employed in the English. Ecclesiastical courts to some extent, it was unknown to the common law, and also to the practice in equity.  *Hyman* v. *Cameron,* 46 Miss. 725.

Where permitted it is controlled by the statute and not to be allowed in cases other than those therein prescribed.  *Walker* v. *Sanders,* 123 Am. St. Rep. 275.

Only chapter 4, Code 1906, so far as we have been able to determine, authorizes intervention in equity proceedings.  That chapter provides for the administration of general assignments in the courts of equity.  Section 104, Code 1906, Hemingway's Code, section 111, same chapter, especially provides that any creditor may file in the cause a cross-petition and may make the assignor and other persons, whether parties to the suit before that time or not, defendants thereto, and show to the court that the assignment is fraudulent, or ought not for any other reasons, to be enforced.  This, of course, can only be done in a case where the assignment is general.  In a case where it was special or partial it could not be done, since a debtor under the law would have an undoubted right to prefer any particular creditor as it is said that it is a present day tendency to recognize the view of preferences where allowed

at common law, and that the principles of an insolvent or bankrupt law are not applicable to the making of general assignments. *Pollock et al.* v. *Sykes,* 74 Miss. 700, 21 So. 780.

In a proceeding in equity a party defendant has not only the liberty to answer and contest the proceeding against him by way of denial, but he is entitled as of right to exhibit a cross-bill against all or part of the complainants, and against all or part of his co-defendants. Unless he can do this he is in no sense a party. Daniel's Chancery Pleadings (5 Ed.), 1548; Story's Equity Pleadings, sec. 389; *Bishop* v. *Miller,* 48 Miss. 364; *Shaw* v. *Milsaps,* 50 Miss. 380; *Wright* v. *Frank et al.,* 60 Miss. 32.

It is therefore respectfully submitted, without pursuing this inquiry further, that in the first instance the petitions of intervention should have been dismissed on the oral application of the complainant, and second; that they should have been permitted to withdraw their answers and file demurrers and that the demurrers should have been considered and sustained, dismissing the petitions of intervention.

General Receivership. The Chancellor says that this was a general receivership. We take issue with him. The complainant asked for the installation of the same on the theory that the property might be preserved for the benefit of both complainant and defendant.

The prayer of the bill was that the court would declare complainant's lien paramount and apply the proceeds of the sale to the satisfaction of complainant's debt.

The bill charged that the property was insufficient to pay the debt; that the mill was idle, the property going to waste; that defendant had absconded and was insolvent. This showing conferred jurisdiction to appoint the receiver. *Phillips* v. *Eliand,* 52 Miss. 721; *Cortlyen* v. *Hathway,* 64 Am. Dec. 478, and notes; *Cameron* v. *Groveland Imp. Co.,* 72 Am. St. Rep. 26, and note.

The complainant in this case invoked the aid of the court for the specific purpose of enabling him to preserve the property to aid in paying his own debt and not

the debts of others. It would be a strange procedure if he should be philanthropic enough to forego his right to the security he had in favor of others who were only ordi- nary creditors. Yet this is what the court makes him do. We repeat that this was not a general, but a special re- ceivership, and that the authorities cited by him: 34 Cyc., 340, 341 and *Humphrey* v. *Stafford,* 71 Miss. 136, 13 So. 865, do not support his contention.

While appellant has no objection to the so-called in- tervenors propounding their claims and proving same against the defendant, if he does not object, he certainly objects to the fund arising from the sale of property, se- curing his debts, being dissipated in the payment of or- dinary debts of other creditors: debts, too, not against the business of appellee, Harvey, but personal debts in- curred about other matters. Intervenors can prove these debts and participate in the assets of the estate if par- ties complainant and defendant do not object, but if they assume a hostile attitude to the parties, complainant or defendant, they must do so by an original bill. The ap- pellant could as well have had the personal property impounded by writ of sequestration as provided by Code 1906, section 563, Section 323, Hemingway's Code, as by resorting to a receivership proceeding. We do not be- lieve that it will be contended with any degree of serious- ness that third parties could intervene under the former procedure. If not, then they could not under the latter

We therefore respectfully submit that the case ought to be reversed, the demurrers to the petition, the amend- ed petitions of intervention sustained and dismissed with a decree in this court for complainant for the money in the hands of the receiver.

*J. W. Backstrom,* also for appellant.

THE FIRST PROPOSITION THAT WE WANT TO SUBMIT TO THE COURT, IS THE QUESTION OF INTERVENTION. This suit was instituted by the appellant, and, is not a general re- ceivership, but, is a special receivership, as the original bill only asks for a receiver for the property covered by

the contract and the receiver was only appointed for that property, and of course, he had no authority other than the authority given in the decree of appointment. C. C. Harvey answered the original bill and made his answer a cross-bill, and all issues raised in the answer and cross-bill were fully litigated, and after these matters were fully litigated and three intervenors who are appellees here, ask leave of the court to amend their petitions of intervention and be allowed to contest the original bill on grounds other than had been raised by the answer and cross-bill of Harvey. The complainant, or appellant here, never at any stage of the proceedings invited anyone to present their claims, and the three appellees here never at any time until after the case had been tried out on the original issues ask leave to be made parties to this cause. The appellant objected to said parties coming in and objected to them being allowed to amend their original petitions as will fully appear by the decree 'rendered in the record. These intervenors should not have been allowed to intervene at the time they were allowed to intervene and most certainly should not have been allowed to amend their petitions and intervene over the objection of the appellant. When the court allowed the three intervenors to come in and permitted them to be substituted in the place and stead of the original defendant, and caused the whole matter to be relitigated, the court erred, and we submit that it is not the policy of the law. 20 R. C. L. 683, sec. 20; 20 R. C. L. 698, sec. 35. There appellees were substituted in the place and stead of the original defendant. *Hyman* v. *Cameron et al.,* 46 Miss. 725, is very much in point.

The rule announced in the *Hyman case, supra,* was followed by this court in *Whitnet* v. *Hanover Nat'l. Bank, et al.,* 71 Miss. 1009, 15 So. 33. To the same effect as above, may be cited *Shields* v. *Barrow,* 17 How. 130, (Tex., 145), 15 L. Ed. 158; *Searles* v. *Jacksonville, Pensacola and Mobile R. R.,* 2 Wood. 621; 1 Daniells Chc. Pleadings & Practice, 287, note 2; Fletcher Pleadings & Practice, sec. 53; *Bush et al.* v. *Ross et al.,* 90 Miss. 32, 43 So. 70;

*Crystal Springs Bank* v. *N. O. Cattle Co.*, 95 So. 520. The facts in this case and the facts in the case at bar are so nearly alike that I cannot differentiate the two cases.

In the case at bar, the three intervenors had a complete remedy by an original bill and which course they should have pursued instead of the course of intervening. These parties were strangers to the original bill and had no standing in the court and most certainly they did not have the right to intervene after the matter had been litigated and raise new issues and cause the whole matter to be relitigated by the complainant.

*Stevens & Heidelberg,* for appellee.

RIGHT OF APPELLEES TO BE HEARD IN THIS PROCEEDING. We take issue with counsel for appellant as to the character of receivership here involved. It is true that the original bill asked for a receiver for the property involved in the sawmill business and the mercantile business of Mr. Harvey, but immediately the receiver was appointed the matter was treated as a general receivership by the parties and the court, and all assets of Harvey were taken into the hands of the receiver and under general orders of sale by the court were sold and converted into cash by the receiver. The receiver applied for this order of sale, this receiver was the brother of appellant, was the same party who, according to his own sworn testimony, owned the three thousand three hundred and twenty-five dollar note, and who, according to his contentions was to generally supervise the business of Harvey and who was represented in the receivership proceedings by the same counsel who filed the original bill for the appellant and got the receiver appointed; all the proceedings in court down to the point of the filing of the contests by the appellees were framed and conducted by this same counsel; it was this same receiver and this same counsel who gave notice to the creditors to come in and propound their claims and who are

now in the attitude of objecting to the appellees doing the very thing which in the proceedings they were conducting they had invited them to do.

The bill itself alleges the insolvency of the defendant and the insufficiency of his estate to pay his debts, and it is shown by the record that he could not be served with personal process. The court, through its strong arm, the receiver, and at the instance of appellant, took charge of all the estate of this absent and absconding debtor, and before ever there was opportunity given for defense by the defendant in the usual course of procedure and before there was opportunity given to other creditors of the defendant to protect their interests, the court, for the purpose of protecting the property from waste, and those who should be ultimately entitled to it from further loss, made a general order of sale, converted all the property into cash and then invited all who might be interested to come in and set up their claims.

Let us be reminded of some of the fundamental principles underlying receivership proceedings and the jurisdiction of chancery in reference thereto. We quote a few authorities on the subject: 1 Tardy's Smith on Receivers (Second Edition), 1, 2, 5, 14, and 22; 34 Cyc. 238, 248; 20 R. C. L. 683; 21 Cyc. 343; Fletcher's Equity Pleading & Practice, 497; 34 Cyc. 340, 341.

It would constitute a flagrant abuse of the process of a court of equity if the appellant and his brother should be allowed to take a security on the property of the defendant in this case, which is denounced by the law as fraudulent and void as to creditors, then under the circumstances as hereinbefore adverted to, to secure the appointment of that brother as receiver, obtain general orders of the court converting all the property of the defendant into cash promptly, then when creditors come in pursuance to the invitation of the court to set up their valid claims, object that they have no place in the proceedings and must go off in some other court or some

other case and file an independent action against the
non-resident appellant, be kicked out of the proceed-
ings in which the entire estate has been administered and
converted into cash, and told to go elsewhere for remedy.
Certainly the courts of equity of our state are not this
impotent to administer justice. Their procedure is cer-
tainly not thus circumscribed. They are still happily
endowed with full authority and jurisdiction to do equity
and justice between persons interested in the same sub-
ject-matter, and especially in a fund resting in its own
hands, gathered there by its own orders for ultimate dis-
tribution to those entitled thereto.

There is no analogy whatever between the instant case
and the case of *Hyman* v. *Cameron*, 46 Miss. 725, cited by
opposing counsel. There was no receivership involved
in the latter case, but there was an effort on the part of
one party to have himself substituted as complainant in
a suit which had been filed by another party. Nor is
there any analogy between the instant case and that of
*Bush* v. *Quick*, 90 Miss. 32. The case treats strictly of
intervention proper, and there was no receivership there
involved.

Nor is the instant case analagous to that of *Whitney* v.
*Bank*, 71 Miss. 1009. That case, instead of combating the
contentions which we here make, emphasized that the
proper procedure for appellees to have pursued in that
case was to present their claims in the receivership pro-
ceeding and in that proceeding raise any points of
contest which they might have against claims of others
propounded in that proceeding. That case is also au-
thority for the proposition that the fund in the hands
of the court in the instant case was a trust fund for
the benefit of creditors of the defendant Harvey. The
learned Chancellor very aptly distinguishes the in-
stant case from that of *Crystal Springs Bank* v. *New
Orleans Cattle Loan Company*, 95 So. 520. In the
latter case there was a proceeding to foreclose a mort-
gage on a certain lot of cattle. After the cause was heard

on bill, answer and proof and after the evidence was closed and the cause was being argued by counsel, certain creditors holding liens on other property than the cattle but the value of which was insufficient to pay their claims, filed a petition for intervention attacking the validity of the deed of trust, of the New Orleans Cattle Loan Company. The prayer was to "be permitted to file a bill of intervention." The chancery court in that case denied the application.

The appellees are not undertaking to re-litigate the issues tried on the main hearing, but have simply sought to have their claims allowed against the estate of the insolvent debtor and to share therein with the appellant and other creditors as unsecured common creditors of the estate. As they had a right to do, they have brought to the attention of the court the invalidity of a so-called paramount lien claimed by the appellant and asked that it be declared void and that appellees and other creditors who should validly propound their claims might share in the fund.

Argued orally by *C. G. Mayson,* and *J. W. Backstrom,* for appellant.

COOK, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Greene county, rendered in a suit of appellant against C. C. Harvey and in the receivership proceedings involved in said suit; said decree allowing the claims of appellees filed in said receivership proceedings, and allowing the claim of appellant in such proceedings, but denying him a paramount lien on the funds in the hands of the receiver, and directing that all creditors who had validly propounded their claims in said proceeding should share ratably in such funds.

The facts involved in this litigation are substantially as follows: C. C. Harvey, a citizen of Greene county, purchased certain sawmill property, including a mer-

cantile business and standing timber.  Being in need of
funds to pay a part of the purchase price and to meet
outstanding obligations, he applied to Horace S. Turner
for a loan of twenty-one thousand dollars.  He repre-
sented to Turner that this sum would pay up all his debts,
and he furnished a timber estimate showing a total of
three million three hundred and fifty thousand feet of
stumpage owned by him.  Horace Turner arranged with
his brother, J. Tyler Turner, of Mobile, Ala., appellant
herein, to make the loan to Harvey, and, in order to se-
cure the payment of the loan, it was agreed that Harvey
should convey to the appellant all the properties con-
nected with the said sawmill and mercantile business,
while the appellant would execute a contract to resell
to Harvey the same properties for a sum equal to the
amount of the loan and an extra charge of three thou-
sand three hundred and twenty-five dollars, making a
total sum of twenty-four thousand three hundred and
twenty-five dollars.  These papers were duly executed;
the contract providing that the consideration for this re-
sale should be evidenced by ten promissory notes, in-
cluding a note for this extra charge of three thousand
three hundred and twenty-five dollars, all the notes be-
ing payable to the appellant at the Merchants' Bank of
Mobile.  There was a conflict in the evidence as to what
this extra charge represented.  The defendant, Harvey,
contended that it was in the nature of a charge for the
use of the money and therefore interest, while Horace
Turner contended that this charge was understood be-
tween the parties to cover services which he himself was
to perform for Harvey in the supervision of Harvey's
mill operations and lumber sales, and in the furnishing of
orders for lumber from the files of the Turner Timber
Company, then operating at Avera, and of which Horace
Turner was the principal owner and manager.

The record shows that, at the time of these transac-
tions between Harvey and the Turners, Harvey was
largely indebted to the appellees herein, and that no part

of this indebtedness to these appellees has been paid. The contract provided that all invoices for lumber sold by Harvey should be assigned to and deposited with the Bank of Avera, and when collected that eight dollars per thousand feet should be deposited to the credit of appellant for credit on the notes due by Harvey to appellant. Harvey operated the business for several months and paid to the appellant the sum of about seven thousand dollars, when it developed that the amount of the standing timber involved had been overestimated to the extent of a million or more feet, and that it would be impossible to pay the amount due the appellant out of the sawmill operation. Thereupon Harvey absconded, leaving the business without any one in charge thereof. The appellant then filed his bill of complaint in the chancery court of Greene county, setting up the contract existing between him and the said Harvey, alleging that Harvey was in default on one or more payments, had breached his contract in other respects, had absconded to parts unknown, and left the properties in incompetent hands and going to waste, that he was insolvent, and that the complainant was entitled to the possession of the property or to a paramount lien thereon. The bill was framed upon the idea that this contract between the parties was a conditional sale, and that complainant was entitled to the possession of the property, but prayed in the alternative that he be decreed to have a paramount lien upon the property, and that it be sold to satisfy complainant's claim for the unpaid balance due on said notes, and also prayed that a receiver be appointed to take charge of the property and preserve the same until further order of the court. Upon the bill of complaint a receiver was appointed without notice and authorized to take charge of all the properties described in the bill of complaint and covered by appellant's said contract. This receiver, Horace Turner, brother of the appellant, and, as the record shows, the owner of the three thousand three hundred and twenty-five dollar note already referred to, qualified and took charge of the properties.

Thereafter the receiver applied to the court for authority to sell the properties in his hands, and was authorized by appropriate decree to sell for cash all properties in his hands or under his control. Early in the proceedings, upon application of the receiver, an order was entered by the court directing that notice be given to all creditors of the estate of C. C. Harvey, and all persons having any claims or liens in and to the property described in the bill of complaint, or to any funds in the hands of the receiver, to file said claims with the chancery clerk on or before the second Monday of January, 1923, and advising such creditors that all claims not filed on or before said date would be disallowed and barred from participating in any of the assets or property. Due notice of this order was given by publication, and at the January, 1923, term of the court a decree was entered granting extensions of time for filing answers and claims, etc., which is not here material.

The defendant, Harvey, appeared and filed an answer and cross-bill, averring, among other things, that the said note for three thousand three hundred and twenty-five dollars was an interest charge, and that this interest, in connection with the six per cent. interest borne on the face of the notes, amounted to more than twenty per cent., thereby rendering the contract illegal and forfeiting the principal. The several appellees filed, within the time allowed by the court, petitions presenting their claims for allowance, and in addition thereto adopting the allegations of the defendant's answer charging that the complainant's claim was usurious and asking its disallowance. These petitions further set up that all the properties of the defendant had been taken into the possession of the court through the receiver, sold and converted into cash, and that therefore the creditors were without remedy, except as against the funds in the hands of the receiver, and charging the insolvency of the defendant and their right to participate in the funds in the hands of the receivers as creditors of the defendant.

At the July, 1923, term of the court, over the objection of
the appellant, the appellees were permitted to amend
their petitions and contests so as to charge that the
transaction between the appellant and the defendant was
a loan of money rather than a conditional sale, that the
documents evidencing the transaction amounted simply
to a mortgage to secure a loan of the amount advanced
by the appellant, and that the mortgage thus attempted
to be taken by the appellant was fraudulent and void
as to creditors, because it covered a stock of merchandise
and other property consumable in the use, which was left
in the possession of the mortgagor, the defendant, with
the right on his part to use, sell, and dispose of the same
in the usual course of business.

The cause then proceeded to trial, and upon the evi-
dence a decree was entered in favor of the appellant on
the question of usury raised by the answer and cross-
bill, but reserved for further consideration and hearing
the other questions involved, including the proper dis-
tribution of the funds in the hands of the receiver, and
allowed further time in which the appellant might an-
swer the petitions of appellees contesting his claim to
a lien on the funds. Within the time allowed, the appel-
lant filed answers denying the claim of appellees that his
asserted lien was void.

At the succeeding term of the court the case was again
called for hearing upon the petitions of appellees and
upon the issues previously reserved by the court. At this
hearing the appellant filed motions to be permitted to
withdraw his answers filed to said petitions, and to file
demurrers thereto; the grounds thereof, among others,
being: That "this is a suit between J. Tyler Turner as
complainant and C. C. Harvey, defendant, and the pe-
tition of the said Bank of Richton does not set up a state
of facts that would entitle it to intervene in said cause
over the objection of the complainant." "The said Bank
of Richton is neither a complainant or defendant in said
cause and is a stranger thereto, and under the law it is

not entitled to intervene in said cause." "That the questions at issue between the complainant and the said C. C. Harvey, defendant, have been adjudicated by this court, and to permit the said intervener to intervene in said cause would be permitting it to be substituted in the place and stead of said defendant, and cause the whole subject-matter to be relitigated with another defendant." "That it does not appear by said petition of intervention that said intervener has any lien on any of the property or the money in the hands of the receiver in said cause, and he is therefore not entitled to intervene." And "that it is not shown from said petition of intervention that the right of the intervener, if any right it had, cannot be conserved without its interfering in this suit."

The court temporarily overruled these motions of appellant, reserving final decisions upon the merits of the motions and the demurrers tendered therewith until the final decision of the entire case upon the merits. After the evidence had been heard, the court entered a decree adjudging that said demurrers were not well taken, and that the motions tendered therewith should be finally overruled; ordering that the claims of the appellees be allowed for the full amounts thereof as valid claims against the funds and property in the hands of the receiver, and that the claim of the appellant be likewise allowed as a valid claim against said funds, and that all of said claims be allowed to participate ratably in any distribution of such funds; adjudging that the contract sued upon and exhibited with the bill was intended and was in fact security for a loan of money, that said security embraced a stock of merchandise and other property and was retained by the said Harvey with the right on his part to use and sell the same in the usual course of business, and that consequently the said security and lien claimed upon said property and upon the funds in the hands of the receiver was void as to creditors of Harvey, and especially as to those creditors whose claims had been properly presented and allowed in the cause. Other provisions of the decree are not here material.

The first assignment of error is based upon the action of the court in overruling the appellant's motions for permission to file demurrers to the petitions of the intervening creditors, and in holding that the demurrers tendered were insufficient, thus, over the objection of the appellant, permitting these intervening creditors to become parties to the proceedings and to interpose therein a contest of the validity of appellant's asserted security, and in support of this assignment the appellant relies upon the case of *Crystal Springs Bank* v. *Cattle Loan Co.,* 132 Miss. 52, 95 So. 520, as being controlling. In that case the appellee was seeking to foreclose a mortgage by a bill in equity. Pending the litigation, a receiver was appointed to take charge of the property covered by the mortgage, and, pursuant to an order of the court, this property was sold by the receiver and the proceeds of sale held to await the final decree of the court. During the trial, certain creditors filed a petition for intervention, attacking the validity of the mortgage upon several grounds. On appeal this court held that:

"What the appellant is trying to do is to intervene and establish a claim to the money in the hands of the receiver adverse to both of the original litigants, and such practice, in the absence of a statute permitting it, is not permissible either at law or in equity. Its remedy, if any it had, was by an original bill."

The appellees seek to differentiate the case at bar from the *Crystal Springs Bank case, supra,* principally upon the grounds, first, that in the latter case there was a special receivership involving only the property covered by the mortgage, while in the case at bar the receivership is a general one, covering all the property of the defendant; and, second, that no notice advising and inviting creditors to file their claims was given in the Crystal Springs Bank case; and, third, that the proposed intervention in the latter case was not presented until the final submission of the cause.

Considering these grounds of differentiation in the reverse order, we think it is manifest from the opinion in

the Crystal Springs Bank case that the fact that the proposed intervention was not featured until the final submission of the cause was not considered as controlling or influential in the decision of the question involved. The right of the creditors to intervene in the proceeding at all was the question decided, and the stage of the proceeding at which the petition was filed does not appear to have been considered.

The next question for consideration is whether or not the right of appellees to intervene and contest the validity of appellant's security is affected by the fact that the court ordered notice to be given to creditors inviting them so to do. We do not think the fact that this notice was given is decisive of the question involved. The notice did not create a right to so intervene over the objections of the complainant, and, if none existed otherwise, this notice had no effect upon the right of the parties, and especially of the complainant, who objected to the intervention.

In the final analysis, the decisive question is whether or not the receivership was a general one, or a special receivership in aid of the complainant's asserted rights under the contract or mortgage upon which the suit was based. If this receivership can be treated as a general one for the benefit of creditors, then the notice to creditors to file their claims was proper, and the action of the court upon the demurrers was correct, since the creditors who appeared and proved their claims became parties in interest, and were entitled to contest with other creditors the validity of their claims. If the receivership was special or only ancillary to a proceeding to enforce certain rights asserted by the complainant against the defendant, under and by virtue of a contract between them, the rule announced in the case of *Crystal Springs Bank* v. *Loan Co., supra,* must control. It seems clear to us that the receivership in the case at bar is special, and that, on the facts, it cannot be differentiated from the Crystal Springs Bank case. The facts in the two cases

are practically identical, except that in the case at bar the contract or mortgage involved happens to cover all of the debtors' property. This circumstance does not change the character of the receivership involved. The complainant is asserting the rights of a lien creditor only upon the property covered by the contract, and the receivership was asked for and had only upon the property covered by the lien asserted under and by virtue of this contract. The appellees are common creditors, having no lien on the property in the hands of the receiver, who are, as said in the Crystal Springs Bank case: "Not attempting merely to share in the fund here in question, but to defeat the complainant's claim to the exclusive right thereto."

To the rule that a person has no right to intervene as defendant in equity against the objection of the complainant, there are two well-recognized exceptions—one growing out of trust relations, where the *cestui que trust* not being a party, shows that it is necessary to make him a party to protect his interests, and the other where there is a fund in court to be distributed, of which the intervener is entitled to a share (20 R. C. L. 683, 21 Cyc. 343) ; but in the *Crystal Springs Bank Case, supra,* it was expressly held that an attempt to defeat a complainant's claim to the exclusive right to a fund in court does not come within the exception last above stated. The defendant to the original bill answered the bill, and made his answer a cross-bill, and all the issues raised by the answer and cross-bill were fully litigated. In the decree adjudicating all issues between the complainant and the original defendant, over the objections of the complainant, the interveners were granted permission to amend their petition so as to raise other issues challenging the validity of the mortgage contract between the complainant and the defendant to the original bill. We think this was error, and that the petitioners' rights, if any, should have been presented by an original bill.

For the error of the court below in refusing to permit the complainant to withdraw his answers to the inter-

vention petitions and to file demurrers thereto, on the ground that the demurrers tendered were insufficient and not well taken, the decree appealed from will be reversed, and the cause remanded.

*Reversed and remanded.*